**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

**SCOTTSDALE INSURANCE
COMPANY,**

**Plaintiff,**

**v.**                                                                    **Case No. 5:19-CV-0156-JKP**

**EDWARD FLORES, et al.,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

The Court has under consideration an Amended Motion to Dismiss (ECF No. 28) filed by

Third-Party Defendants Arnold A. Cavzos and Arnold A. Cavazos Insurance Agency (collectively

"Third-Party Defendants") on November 1, 2019, and a Motion for Partial Summary Judgment

(ECF No. 29) filed by Plaintiff Scottsdale Insurance Company ("Scottsdale") on that same date.[1]

Defendant and Third-Party Plaintiff Edward Flores d/b/a Flores Tire Shop, Inc. ("Flores") has

responded to both motions.[2] *See* ECF Nos. 31-32. Plaintiff has filed a reply brief to support its

motion. *See* ECF No. 33. The motions are ripe for ruling.

**I. BACKGROUND**[3]

Western Heritage Insurance Company issued a policy of insurance to Edward Flores, dba

---

[1] The Court has shortened the titles of the motions to their essence. In addition, it notes that the listed Third-Party Defendants are the only third-party defendants named in the First Amended Third-Party Complaint (ECF No. 20). The Third-Party Plaintiff dropped all other third-party defendants through that amendment, and they are no longer considered as part of this case.

[2] The complaint in this action lists three defendants: (1) Edward Flores dba Flores Tire Shop; (2) Flores Tire Shop, Inc.; and (3) Angelina Aguilar. *See* Compl. for Decl. J. (ECF No. 1). Based on the briefing now before it, the Court will treat the first two defendants as a single entity defendant referred to as "Flores" for purposes of this Memorandum Opinion and Order.

[3] "In this circuit, courts routinely adjudicate the scope of insurers' duty to defend under Texas law." *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682 (5th Cir. 2012). Accordingly,

Flores Tire Shop, to provide coverage from April 16, 2014, through April 16, 2015. *See* ECF No. 1-3. That policy provides liability insurance coverage for garage operations. *See id.* at 59. More particularly, the insurance company agreed to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.'" *Id*. at 67. That same provision goes on to state that the insurance company has "the right and duty to defend any 'insured' against a 'suit' asking for these damages" but has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id*.

The policy defines "Garage operations" broadly to "include all operations necessary or incidental to a garage business." *Id*. at 81. But it also contains an "Exclusion – Designated Garage Operations – Tires" in an endorsement (Form WHI 26-0967 (02-13), which provides:

> This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or medical expense arising out of the following designated operations:
>
> 1. Sales, service, installation, maintenance, or repair, of any tire that has been altered by being recapped, retreaded, re-grooved, siped or vulcanized, other than by the original manufacturer;
>
> 2. Sales, service, installation, maintenance, or repair, of any tire(s) five years or older; or
>
> 3. Sales of used tires for any auto that requires a commercial drivers [sic] license to operate.

---

the courts consistently apply "the eight-corners rule," which limits "the scope of an insurer's duty to defend" exclusively to "the allegations in the pleadings and the language of the insurance policy." *Id*. at 682-83 (citation and internal quotation marks omitted). The "most recent complaint in the underlying action" is the relevant pleading for purposes of the duty to defend. *Century Sur. Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1326 (2019). Because this case also involves the duty to indemnify, the Court includes background information from more than just the eight corners of the underlying state petition/complaint and the relevant insurance policy. But, for purposes of the duty to defend, its consideration is limited to the relevant eight corners.

*Id*. at 99.[4]

Scottsdale, as successor in interest to Western Heritage Insurance Company, commenced this action on February 19, 2019, to obtain a declaration that it has no duty to defend its insured, Flores, against a suit for injuries brought by Angelina Aguilar and that it is not required to indemnify its insured. Compl. for Decl. J. (ECF No. 1). As alleged by Flores, the insurance policy at issue was sold to Flores by the Third-Party Defendants as agents of Scottsdale. *See* First Am. Third-Party Compl. (ECF No. 20) ¶ 14.

As alleged in her original state petition filed in March 2019, Aguilar suffered a spinal injury rendering her quadriplegic when the left rear tire ("Subject Tire") of the 2006 Chevrolet Suburban driven by her former partner de-threaded causing the vehicle to roll over on or about March 29, 2015. *See* Pl.'s Orig. Pet. (ECF No. 29-1) ¶ 7. She further alleged:

> A few days before the Subject Accident, Plaintiff's former partner took the Suburban to Flores to have the tires inspected and balanced. Flores inspected all of the tires, including the Subject Tire. Based on this inspection of all of the tires, Flores recommended that Plaintiff's former partner replace one of the tires, which he did with a used tire that Flores sold to him and installed on the Suburban. Flores assured Plaintiff's husband that all of the other tires on the Suburban, including what is believed to be the Subject Tire, were in a serviceable and safe condition. In reality, one of those tires was the Subject Tire, which was more than six years old. On this basis alone, Flores should have replaced the Subject Tire, or advised Plaintiff's former partner that the Subject Tire was aged and needed to be taken out of service and replaced.

*Id*. ¶ 8. She also alleged:

> By charging money and agreeing to inspect the tires to determine whether they were safe for use, Flores . . . undertook a duty to inspect the tires and to inform [her] and her former partner of any improper patches, improper repairs, signs of aging, signs of underinflation, or other conditions that would render the tire unsafe to continue using.

*Id*. ¶ 11. She alleged that the Subject Tire "had an improper repair" and "exhibited signs of aging,"

---

[4] For ease of reference the Court will often use "aged tire" to refer to a tire five years or older and refer to the exclusion set out in Subparagraph 2 as the aged-tire exclusion.

such "conditions were the cause of the thread separation," and Flores "should have recommended that the tire be taken out of service during the inspections" because of those conditions. *Id*. ¶ 12.

Through her original petition, Aguilar sought money damages for past and future (1) medical care; (2) lost wages and earning capacity, (3) physical impairment; (4) physical pain, emotional distress, and mental anguish; and (5) disfigurement. *Id*. ¶ 17. She brought the following cause of action against Flores:

> Flores was negligent in its inspection and servicing of the Suburban's tires, including the Subject Tire. Flores undertook a duty to inspect the tires, including the Subject Tire, and to warn of any defective or dangerous condition. Flores was negligent in failing to warn Plaintiff or her former partner of the danger or [sic] the aged tire, and in failing to recommend that the tire be taken out of service and replaced. The Subject Tire was damaged and had an improper patch/repair then, pleading in the alternative, Flores was further negligent in failing to note, warn or correct such condition. Plaintiff and her former partner relied upon Flores' representations that the Subject Tire was in a serviceable and safe condition by going on their trip. Flores' negligence, negligent misrepresentations and negligent undertaking were proximate causes of Plaintiff's injuries and damages, for which Flores is liable to Plaintiff.

*Id*. ¶ 14.

Scottsdale assumed the defense of Flores in the underlying state action under a reservation of rights dated June 19, 2017. *See* ECF No. 29-4. Invoking the aged-tire exclusion, Scottsdale asserted that the policy bars coverage for the claims by Aguilar and it "reserves the right to deny coverage if it is determined that this exclusionary language applies." *See id.* at 5. The insurance company also reserved a right to modify its decision as to providing a defense and/or indemnity "on a new or amended complaint," and its decision was "based on the facts as presented" to date. *Id*. at 6.

In April 2019, Flores filed an Answer (ECF No. 5) and a Third-Party Complaint (ECF No. 9) in this federal action. Aguilar filed an amended state petition on August 15, 2019. *See* Pl. First Am. Pet. (ECF No. 29-2). The relevant provisions are the same as the original petition, except that

4

Paragraph 8 omitted "balanced," Paragraphs 11 and 12 used "roadworthiness" instead of the more particular conditions described originally, and Paragraph 14 omitted "servicing" and likewise referred to the general "roadworthiness" rather than the age of the tire. *Compare* Pl.'s Orig. Pet. *with* Pl. First Am. Pet. Within two weeks, Flores filed an Amended Third-Party Complaint (ECF No. 20) in this action. Later in 2019, the parties filed the motions and briefing now before the Court. The Court first addresses the partial motion for summary judgment.

## II. MOTION FOR SUMMARY JUDGMENT

Through its motion, Scottsdale seeks a declaration that it has no obligation to defend or indemnify its insured, Flores, based upon an exclusion that purportedly bars coverage for repair or service of tires five years or older. In the underlying action, Aguilar alleged Flores was "negligent in its inspection" of all the tires; in failing to recommend that the aged tire be replaced; and representing that the tire was "in a safe and serviceable condition." Although Aguilar amended her state petition to remove the word "service" from her cause of action, Scottsdale submits that "a request to a tire shop to inspect a vehicle's tires and make recommendation as to any required maintenance, repair, or, if necessary, replacement, naturally and logically falls within a tire shop's service of the inspected tires." With that submission, it argues that the stated allegations fall within the scope of the exclusion and it therefore has no duty to defend Flores in that action and should be allowed to withdraw as counsel.

The parties agree that Texas law applies to the interpretation of the insurance policy. Texas law provides that "the same rules that apply to contracts generally" govern "the interpretation of insurance contracts." *Century Sur. Co. v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018) (quoting *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996)), *cert. denied*, 139 S. Ct. 1326 (2019). Thus, "terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were

meant in a technical or different sense." *Id*. (same). Furthermore, courts must consider the contract "as a whole, with each part given effect and meaning." *Id*. (same).

In addition, Texas recognizes that the duties to defend and indemnify are "distinct and separate." *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997). An insurer has a duty to defend when a lawsuit against an insured "alleges and seeks damages for an event potentially covered by the policy, even if groundless, false or fraudulent." *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (citation omitted). Whereas, the duty to indemnify is "to pay all covered claims and judgments against an insured." *Id*. (citation omitted). "The difference between the two is a matter of timing." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252-53 (5th Cir. 2011). The duty to defend arises at the outset of litigation while the duty to indemnify occurs after resolution of the claims asserted.

The parties agree on the general principles of law applicable to their dispute. And this Court has no need to thoroughly delve into those principles. Suffice to say, the applicability of the aged-tire exclusion is central to whether Scottsdale has a duty to defend or indemnify. The Court first addresses the duty to defend.

### A. <u>Duty to Defend</u>

As previously noted, courts consistently apply the eight-corners rule to determine the scope of an insurer's duty to defend. *See GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682-83 (5th Cir. 2012). This means that they look exclusively to the allegations contained within the four corners of the most recent state petition along with the terms of the insurance policy set out within its four corners. *Century Sur. Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1326 (2019).

The courts broadly define "the scope of the duty to defend" and when the underlying state

petition "does not state facts sufficiently to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the [petition] within the coverage of the policy." *Missionary Church*, 687 F.3d at 682-83 (citation omitted).

> If the underlying complaint pleads facts sufficient to create the potential of covered liability, the insurer has a duty to defend the *entire* case, even if the allegations are demonstrably false, fraudulent, or groundless, and even if some of the injuries alleged are not covered or fall within the scope of an exclusion.

*Seidel*, 893 F.3d at 333 (quoting *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013)). Insurers have "no duty to defend," if they "can show that *all* of the alleged liability falls . . . within the scope of an exclusion." *Id*.

Importantly, "the duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, potentially assert a claim for coverage under the insurance policy." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011). Further, under Texas law, the courts "resolve all doubts regarding the duty to defend in favor of the duty" and "construe the pleadings liberally." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (citations omitted). "Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Given that "doubts are resolved in the insured's favor," the Eight Corners Rule "is very favorable to insureds." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). While courts "may draw inferences from the petition that may lead to a finding of coverage, they must limit themselves to considering the facts alleged. *Id*. (citation omitted). "It

is the factual allegations, not the legal theories, that control." *Id*. Under Texas law, furthermore, the insurance company has the burden to prove "that an exclusion applies." *Id*. at 370 (citing Tex. Ins. Code Ann. § 554.002 (Vernon 2005)). The courts narrowly construe exclusions and must draw "all reasonable inferences . . . in the insured's favor." *Id*.

Due to its importance to this litigation, the exclusion bears repeating. The exclusion specifically states that the insurance does not apply to certain injuries or expenses that "arise out of . . . Sales, service, installation, maintenance, or repair, of any tire(s) five years or older." Courts give "a broad, general, and comprehensive interpretation" to exclusions that preclude "coverage for injuries 'arising out of' described conduct." *Seidel*, 893 F.3d at 333 (quoting *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Invest.*, 173 F.3d 941, 943 (5th Cir. 1999) (per curiam)). For "the exclusion to apply," a "claim need only bear an incidental relationship to the described conduct." *Id.* The phrase "arising out of" is "much broader" than "caused by." *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 524 (5th Cir. 2006). Courts interpret the phrase as meaning "originating from, having its origin in, growing out of or flowing from." *Id*. (citation and internal quotation marks omitted); *accord Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998). The Texas Supreme Court has interpreted the phrase to mean "that there is simply a causal connection or relation, which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations and internal quotation marks omitted).

An insurance policy may cover a loss, however, when the loss is caused by both a covered and an excluded act. *See Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990). The determining factor in those circumstances is whether the acts are independent or concurrent causes of the loss. *Compare id.* (independent causes) *with Tex. Sec. Concepts & Invest.*,

173 F.3d at 943 (concurrent causes).

There is no question in this case as to whether Flores is an insured or whether Aguilar has alleged covered injuries caused by an accident. Furthermore, absent the aged-tire exclusion, no one disputes that the alleged negligent inspection would be covered as a garage operation necessary or incidental to a garage business. Stated differently, no one disputes that inspecting tires is covered by the policy in general. With respect to the duty to defend, however, the dispositive issue presented in this case is whether Aguilar's alleged damages arose out of the operations designated in Subparagraph 2. In other words, for purposes of the duty-to-defend analysis, the only disputed question is whether Subparagraph 2 negates the duty to defend because the policy does not cover inspections of an aged tire.

Given the broad construction of "arising out of," it appears that Aguilar's alleged injuries arose out of garage operations. However, rather than encompassing all garage operations, the exclusion only applies to listed operations. While the failed tire was indisputably older than five years, there is no allegation of any sale, installation, or repair of any aged tire. Thus, those operations are irrelevant to this case. Furthermore, as argued by Scottsdale in this case, the allegations of the underlying suit against Flores are based upon service of an aged tire and that any other claim is merely incidental to the conduct invoking application of the exclusion. Based on Scottsdale's arguments, maintenance of an aged tire appears to be a non-issue. Neither party has provided any prior interpretation of the exclusion at issue in this case and the Court has found none.

Aguilar makes several factual allegations to support her claims of negligence against Flores. From those allegations, which the Court accepts as true, Flores inspected all the vehicle's tires resulting in a recommendation that one be replaced and a statement that the others, "were in a serviceable and safe condition." The allegations are also clear that the Subject Tire "was more than

six years old," that tire caused the accident, and Flores did not warn Aguilar or her partner of any defective or dangerous condition. The alleged facts support her claim of negligent inspection as well as a claimed failure to warn. Aguilar initially alleged that her partner took the vehicle to Flores to have the tires inspected and balanced, but later removed the word "balanced" from the allegation. Scottsdale attributes no importance to the change because it views an inspection alone as falling within the realm of the exclusion. Because the most recent state petition controls the duty to defend, the Court will only consider the inspection. But it will mention balancing to contrast it with the more amorphous act of inspecting.

Scottsdale contends that an inspection falls within the service component of the exclusion. While Flores does not specifically contest that contention generally, it does argue that Aguilar alleges that it negligently inspected all the tires, not just an aged tire; thus, removing the allegations from the exclusion. Because the insurance policy does not define "service of a tire," it provides no clear answer. And as already emphasized, the aged-tire exclusion does not apply to all garage operations, just the ones listed. Had the insurance company desired for the exclusion to apply to all garage operations it could have drafted the exclusion in that manner. But it did not do so.

Because Scottsdale has the burden to show that the exclusion applies, the Court looks beyond the failure of Flores to specifically contest that the alleged inspection falls within the meaning of "service of a tire." To provide context and clarity, it first considers whether an inspection falls within the term "service" standing alone. In Texas, as part of the annual vehicle registration process, owners must have their vehicles inspected for a variety of things, including their tires. This type of inspection requires payment for a specific service – the state-required inspection. It would be folly to not consider such an inspection as a service. When a customer pays for an inspection, the customer is undoubtedly paying for a service. But the exclusion specifically refers to service

of an aged tire. So, "a service" in the general sense does not of itself invoke the exclusion.

Scottsdale's burden requires showing that the alleged injuries and expenses arose out of a garage operation listed in the aged-tire exclusion. The ultimate question is whether "service of a tire" includes a tire inspection, and if so, do all tire inspections fall within that garage operation? Balancing a tire, as initially alleged, is a clear form of service of a tire. Although inspecting a tire may be less clear, the Court finds that the ordinary and generally accepted meaning of "service of a tire" would include all acts of inspecting a tire. Thus, while inspections can take on many forms, from the most basic visual inspection to checking thread depth and air pressure to a detailed analysis involving a checklist of items reviewed and use of various testing devices, service of a tire encompasses all paid-for inspections. The performed inspection in this case led to the replacement of one tire and an assurance that the other tires were safe. This is not a case where the underlying state petition alleges a complete failure to inspect the aged tire. To the contrary, the amended petition clearly alleges that "Flores inspected all of the tires, including the Subject Tire." ECF No. 29-2 ¶8.

Based on the four corners of the amended state petition and the four corners of the relevant insurance policy, the Court finds the aged-tire exclusion applicable and Scottsdale thus has no duty to defend. Although Flores argues for finding potential coverage under the policy based upon independent covered causes for Aguilar's alleged injuries, the amended petition only alleges injuries resulting from the failure of an aged tire. Her alleged injuries all arise out of the service, i.e., inspection, of the aged tire.

The Court recognizes that Aguilar alleges both a negligent inspection and a failure to warn resulting from such negligence. The interrelationship between the inspection and the failure to warn is central to the parties' disagreement as to whether the failure to warn is merely incidental

to the conduct falling within the scope of the exclusion. Scottsdale argues that all the alleged conduct is concurrent and thus any conduct that may fall outside the scope of the exclusion is merely incidental and does not make the exclusion inapplicable. Flores naturally argues that the various allegations are independent from each other thus making the alleged loss caused by both a covered and excluded act. But based on the allegations of the underlying state petition, the alleged injuries from Aguilar's multiple claims arise from a single cause. Focusing on the allegations rather than the claims asserted essentially resolves the perceived issue regarding concurrent versus independent causes. Nevertheless, to the extent one might construe the claims as multiple causes of her injuries, the Court finds them concurrent not independent.

## B. <u>Duty to Indemnify</u>

An insurance company's duty to indemnify is not governed by the factual allegations of the underlying state petition, but by facts established in that action. *See Century Sur. Co. v. Seidel*, 893 F.3d 328, 336 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1326 (2019). "Thus, an insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action." *VRV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011). That general rule subsides, however, "when 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Id*. (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex.1997) (emphasis omitted)). In those circumstances, courts may resolve the duty to indemnify at summary judgment. *Id*. Although some courts have noted that "the duty to defend is broader than the duty to indemnify," that does not mean that "there can be no duty to indemnify absent a duty to defend." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011).

Scottsdale argues that the same reasons which negate the duty to defend also negate the

duty to indemnify. It provides no independent summary judgment evidence to support that position. Based on the information before the Court, Scottsdale has not carried its summary judgment burden to show that the exception to the general rule applies here. Scottsdale has not shown that the ultimate facts of the underlying state action negate any possibility that it will ever have a duty to indemnify. Because those facts remain unknown, summary judgment on the duty to indemnify is not warranted at this point.

### III. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), Third-Party Defendants assert that subject matter jurisdiction is lacking because Flores lacks standing to pursue its third-party claims because the underlying state action remains pending and this Court has not resolved this declaratory judgment federal action. Relying on the same arguments and alleged facts, the Third-Party Defendants also move for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Flores asserts that it has standing to pursue its third-party claims. It contends that its claims are based upon misrepresentations made by the Third-Party Defendants regarding the relevant insurance policy and the inclusion of the aged-tire exclusion at issue in this case. It further contends that Scottsdale squarely placed the exclusion at issue through this federal action seeking a declaration that it owes Flores no duty to defend or indemnify it under the insurance policy. Flores argues that absent the exclusion it would have no need to incur expenses in defending this action. It contends that it has suffered actual harm in the defense of this case, and it faces the imminent harm of losing coverage and being exposed to potential liability. It characterizes the lost coverage as particularized and concrete. As a procedural matter, it also argues that the motion to dismiss is untimely.

The timeliness argument is a non-issue. The scheduling order set a November 1, 2019 deadline for dispositive motions. *See* ECF No. 14. This deadline remained in place even after the reassignment of this case to the undersigned. *See* ECF No. 25. The Third-Party Defendants filed the instant motion on that date. Flores, moreover, confuses the Fed. R. Civ. P. 12(a) deadline for filing a responsive pleading with a deadline for motions under that rule. Rule 12(a)(4), however, specifically addresses the ramifications of filing a motion rather than a responsive pleading. While parties may use some Rule 12 motions as a substitute for their responsive pleading, Rule 12 does not make the motion now before the Court untimely. In addition, the motion primarily raises an issue of subject matter jurisdiction, which presents separate considerations. *See* Fed. R. Civ. P. 12(h).

Turning to the jurisdictional standing argument, the Court recognizes that to overcome a facial attack under Fed. R. Civ. P. 12(b)(1) based upon constitutional standing, Flores must allege that it suffered (1) injury in fact (2) fairly traceable to actions of the Third-Party Defendants and (3) likely to be redressed by a favorable decision. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A facial attack relies only upon the pleadings. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

The Third-Party Defendants have merely asserted a facial attack regarding standing. But the amended third-party complaint filed by Flores contains sufficient factual allegations to overcome such attack. Flores alleges that the Third-Party Defendants "knowingly assured" it that the policy would include coverage for the sale of used tires, including those older than five years. ECF No. 20 ¶ 17. While Scottsdale has yet to issue a "blanket denial of coverage" to Flores, it has issued a reservation of rights based upon the aged-tire exclusion that is the centerpiece of Flores third-

14

party claims. *See id.* ¶ 18. Moreover, by commencing this federal civil action, Scottsdale has forced Flores to defend this action. A defense that would be unnecessary absent the aged-tire exclusion. Furthermore, within this Memorandum Opinion and Order, the Court has found that the exclusion negates Scottsdale's duty to defend with respect to the allegations set out in the underlying limitation. Although the duty to indemnify may not be negated depending on what facts are actually established in the underlying litigation, Flores has alleged that it has suffered an injury in fact traceable to the Third-Party Defendants and likely to be redressed by a favorable decision. For these reasons, the Court denies the motion to dismiss to the extent it is brought under Fed. R. Civ. P. 12(b)(1).

Because the Third-Party Defendants rely on the same arguments for obtaining dismissal for failure to state a claim, their motion fares no better under Fed. R. Civ. P. 12(b)(6).They present no viable basis for finding that Flores has failed to state a claim upon which relief can be granted. Moreover, when the Court considered the Third-Party Defendants' prior motion to dismiss as being asserted against the amended third-party complaint, it found that complaint "satisfies the well-established standards for stating a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" as well as satisfying "the pleading requirements of Fed. R. Civ. P. 9(b) for the fraud allegations." *See* ECF No. 26 at 4. The Court thus denies the motion to dismiss brought under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Amended Motion to Dismiss (ECF No. 28) filed by Third-Party Defendants Arnold A. Cavzos and Arnold A. Cavazos Insurance Agency. Because the Court denies the motion to dismiss, the Third-Party Defendants shall file their responsive pleading to the amended third-party complaint **on or before August 11, 2020**, in accordance

with Fed. R. Civ. P. 12(a)(4)(A).

For the reasons stated previously, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Partial Summary Judgment (ECF No. 29) filed by Plaintiff Scottsdale Insurance Company. Based upon the factual allegations of the most recent petition in the underlying state action and the four corners of the relevant insurance policy, the Court grants the motion to the extent it relates to the insurance company's duty to defend, but denies the motion on the duty to indemnify at this point because the ultimate facts have not been resolved in the underlying state action.

Due to the relevance of the outcome of the underlying state action, the Court directs the parties to provide a Joint Status Report **on or before August 11, 2020**, that sets out (1) the current status of the state action and (2) the parties' positions on whether the Court should stay this action pending resolution of the state action.

**SIGNED this 28th day of July 2020.**

**JASON K. PULLIAM**
**UNITED STATES DISTRICT JUDGE**